FILED
United States Court of Appeals
Tenth Circuit

**January 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BRAD LEE DAVIS,

　　Petitioner - Appellant,

v.

CARRIE BRIDGES,[*]

　　Respondent - Appellee.

No. 22-6107
(D.C. No. 5:21-CV-01028-SLP)
(W.D. Okla.)

_____

**ORDER[**]**

_____

Before **HOLMES**, Chief Judge, **KELLY**, and **ROSSMAN**, Circuit Judges.

_____

Petitioner-Appellant, Brad Lee Davis, an Oklahoma state prisoner proceeding pro se,[1] seeks a certificate of appealability ("COA") to challenge the district court's dismissal of his habeas petition brought under 28 U.S.C. § 2254. Mr. Davis also challenges the denial of his request for appointment of counsel pursuant to 25 U.S.C. § 175.

---

[*]　　Pursuant to Fed. R. App. P. 43(c)(2), Carrie Bridges is substituted as Respondent-Appellee for Scott Nunn, former warden of the James Crabtree Correctional Center.

[**]　　This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]　　Because Mr. Davis litigates this matter pro se, we will "liberally" construe his filings, but "we will not 'assume the role of advocate.'" _United States v. Parker_, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (quoting _Yang v. Archuleta_, 525 F.3d 925, 927 n.1 (10th Cir. 2008)).

Additionally, Mr. Davis has filed two motions that remain pending: a request to proceed *in forma pauperis* ("IFP") and a motion for summary disposition.

For the reasons explained below, we **deny** Mr. Davis's request for a COA, **affirm** the denial of his request for appointment of counsel, **deny** his motion for summary disposition, **grant** his application to proceed IFP, and **dismiss** the matter to the extent that Mr. Davis challenges the dismissal of his habeas petition.

**I**

On May 11, 2015, Mr. Davis entered a guilty plea in Oklahoma state court to first-degree manslaughter. On July 16, 2015,[2] the Oklahoma District Court in Pottawatomie County sentenced Mr. Davis to a term of 30 years in prison. There is no indication in the record that Mr. Davis filed a direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA").

Mr. Davis then sought post-conviction judicial review of his sentence in state court. First, on May 3, 2017, nearly two years after he had been sentenced, Mr. Davis filed a motion for judicial review of his sentence pursuant to Okla. Stat. Ann. tit. 22, § 982a (West 2017).[3] The state trial court held a hearing on the motion and, on July 5,

---

[2]     The record is inconsistent as to the precise date on which Mr. Davis was sentenced; various documents in the record show the sentencing as occurring on either the 15th, 16th, or 17th of July 2015. We use the July 16, 2015, date because that is the date that appears on Mr. Davis's official judgment and sentence, but the precise date does not affect the disposition of any of the issues before us.

[3]     At the time Mr. Davis was sentenced, a motion for judicial review could be brought within two years after the sentence was imposed. *See* OKLA. STAT. ANN. tit. 22, § 982a (West 2015). In 2016—before Mr. Davis filed his first motion for judicial review—§ 982a was amended to extend the time in which a motion for judicial review

2

2017, declined to modify Mr. Davis's sentence, although, according to Mr. Davis, it did indicate that he could file another such motion after more time had elapsed. Then, on March 27, 2020, Mr. Davis filed a second motion for judicial review. The state trial court again held a hearing and, on July 14, 2020, declined to modify the sentence.[4]

On July 30, 2020, Mr. Davis filed an application for post-conviction relief to challenge his conviction in Oklahoma state court, arguing that the state trial court did not have jurisdiction over him because he is a member of the Chickasaw Nation and his alleged crime occurred within the boundaries of the Pottawatomie Nation Reservation. After conducting an evidentiary hearing, the state court denied Mr. Davis's motion for post-conviction relief on the merits, and the OCCA affirmed on October 1, 2021.

On October 20, 2021, Mr. Davis filed a petition for habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Western District of Oklahoma. Like his petition for state post-conviction review, Mr. Davis's habeas petition alleged that because the crime occurred in Indian country and he is a member of the Chickasaw Nation, the state court lacked jurisdiction over him. He further alleged that the U.S. Supreme Court's

---

could be filed to five years after sentencing. *See* 2016 Okla. Sess. Law Serv. ch. 160 (West). The statute was again amended after Mr. Davis filed his first motion for judicial review, but not in a way that affects this appeal. *See* 2018 Okla. Sess. Law Serv. ch. 128 (West).

[4]    Mr. Davis has repeatedly insisted that his motions for judicial review were granted because the state trial court held judicial review hearings on his motions even though it ultimately declined to disturb his sentence. The state trial court itself, though, later characterized both motions as having been denied. Regardless, it is undisputed that the state trial court declined Mr. Davis's requests to alter his sentence, and, as such, the precise characterization of the state trial court's rulings is immaterial to the issues before us.

decision in *McGirt v. Oklahoma*, 591 U.S. ----, 140 S. Ct. 2452 (2020) applies retroactively, and that the factual basis of his claim was unavailable before the *McGirt* decision.

The State then filed a motion seeking to have Mr. Davis's petition dismissed as untimely because it was not filed within the one-year time period provided by 28 U.S.C. § 2244(d)(1). In response, Mr. Davis argued, among other things, that (1) the filing of his motions for judicial review tolled the one-year statute of limitations under 28 U.S.C. § 2244(d)(2); (2) the filing of his motion for state post-conviction review tolled the statute of limitations under 28 U.S.C. § 2244(d)(2); (3) there were sufficient grounds to equitably toll the statute of limitations; and (4) the statute of limitations provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA") was inapplicable because Mr. Davis challenges the conviction court's jurisdiction.

The magistrate judge assigned to Mr. Davis's case recommended that the § 2254 petition be dismissed without prejudice as untimely, reasoning that it was not filed within one year of the date on which his conviction became final and *McGirt* did not extend the limitations period. *See Davis v. Nunn*, No. CIV-21-1028-SLP, 2022 WL 2102090, at *1 (W.D. Okla. Feb. 23, 2022). The magistrate judge also rejected Mr. Davis's argument that his application for post-conviction relief tolled the statute of limitations, reasoning that the one-year limitations period had already expired by the time Mr. Davis filed his application for post-conviction relief. *See id*. at *3–4. However, the magistrate judge did not address Mr. Davis's arguments related to his motions for judicial review and did not grapple with Mr. Davis's equitable tolling argument.

Both parties submitted objections to the magistrate judge's report and recommendation. The State filed a limited objection, challenging only the portion recommending that the petition be dismissed without prejudice. Mr. Davis submitted a broader objection, arguing that his petition was timely and, alternatively, subject to statutory and equitable tolling. On May 23, 2022, the district court largely accepted the magistrate judge's recommendation, ruling that Mr. Davis's petition was untimely under 28 U.S.C. § 2244(d)(1)(A) and rejecting Mr. Davis's arguments for statutory tolling under § 2244(d)(2) and for equitable tolling. *See Davis v. Nunn*, No. CIV-21-1028-SLP, 2022 WL 1618534, at *3–4 (W.D. Okla. May 23, 2022). The district court agreed with the State, though, that the petition should be dismissed with prejudice. *See id.* at *4. The district court thus dismissed Mr. Davis's habeas petition with prejudice and declined to issue a COA. *See id*. Mr. Davis timely filed a notice of appeal.[5]

---

[5]    The day before filing his notice of appeal, Mr. Davis filed a motion to alter or amend the judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(3). Although Mr. Davis's motion to alter or amend the judgment was not received by the district court until June 22, 2022—more than 28 days after the district court had entered judgment on May 23, 2022, *see* FED. R. CIV. P. 59(b) (providing that Rule 59 motions must be filed within 28 days of the entry of judgment)—the district court applied the prison mailbox rule and concluded that the motion was timely filed because it was postmarked from Mr. Davis's correctional facility on June 20, 2022. *See* R. at 283 (Dist. Ct. Order, filed July 18, 2022); *see also Price v. Philpot*, 420 F.3d 1158, 1163–64 (10th Cir. 2005) (discussing the prison mailbox rule); FED. R. APP. P. 4(c)(1) (same). The district court denied Mr. Davis's motion to alter or amend the judgment on July 18, 2022. At that point, Mr. Davis's notice of appeal, which had been sent by him on June 21, 2022, and received by the district court on June 23, 2022, ripened. *See* FED. R. APP. P. 4(a)(4)(B)(i); *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 884 (10th Cir. 2011). But because Mr. Davis did not then file a new or amended notice of appeal within 30 days of the district court's July 18 order, the scope of Mr. Davis's appeal before us does not include the district court's denial of his motion to alter or amend. *See* FED. R. APP. P. 4(a)(4)(B)(ii); *Coll*, 642 F.3d at 885.

Mr. Davis now seeks a COA from this Court to challenge the district court's dismissal of his habeas petition. Mr. Davis also challenges the decision not to appoint counsel, and he seeks to proceed IFP. Finally, he has filed a motion for summary disposition based on newly received evidence from the Pottawatomie County Court Clerk or, alternatively, for an order that the Appellee must file a responsive brief.

## II

## A

A prisoner may not secure appellate review of the denial of relief under § 2254 without a COA. *See* 28 U.S.C. § 2253(c)(1)(A); *Montez v. McKinna*, 208 F.3d 862, 866–67 (10th Cir. 2000); *Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012). "We may grant a COA only if the petitioner makes a 'substantial showing of the denial of a constitutional right.'" *Milton v. Miller*, 812 F.3d 1252, 1263 (10th Cir. 2016) (quoting 28 U.S.C. § 2253(c)(2)). Because the district court denied his petition on procedural grounds, Mr. Davis must demonstrate, at the least, "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484.

But although a petitioner needs a COA to appeal the denial or dismissal of a habeas petition, a COA is not a prerequisite to appeal collateral rulings in a habeas case. *See Harbison v. Bell*, 556 U.S. 180, 183 (2009). This is because 28 U.S.C. § 2253(c)(1)(A), the statute requiring a COA, "governs final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the petitioner's detention." *Id.* Thus, collateral rulings, such as those denying a request to appoint counsel or orders denying a recusal request, are not subject to the COA requirement and may be appealed without a COA. *See id.*; *see also Jackson v. Bowen*, No. 22-6068, 2022 WL 2165789, at *2 (10th Cir. June 16, 2022) (per curiam) (unpublished) ("[The petitioner] does not need a COA to appeal the district court's order denying his motion to appoint counsel."); *United States v. McIntosh*, 723 F. App'x 613, 616 (10th Cir. 2018) (per curiam) ("The order denying recusal . . . is a collateral order that does not require a COA for appeal.").[6]

**B**

One procedural bar erected by AEDPA is the one-year statute of limitations provided by 28 U.S.C. § 2244(d)(1). This statute of limitations begins to run from the latest of four dates: (1) the date on which the judgment became final by the conclusion of direct review or expiration of the time to seek direct review; (2) the date on which an unconstitutional or unlawful impediment to filing an action was removed; (3) the date on

---

[6]    We rely on unpublished decisions in our analysis throughout this order only for their persuasive value. *See, e.g.*, *United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015).

which a new constitutional right was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) the date on which the factual predicate of the claims presented could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(A)–(D).

"The time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward [this] period of limitation." *Id.* § 2244(d)(2). But if a state post-conviction application is not properly filed or it is untimely, it does not toll the statutory clock. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). And "[o]nly state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations." *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006) (citing *Burger v. Scott*, 317 F.3d 1133, 1136–37 (10th Cir. 2003)); *see also Perez v. Dowling*, 634 F. App'x 639, 644 (10th Cir. 2015) (concluding that a petitioner was not entitled to statutory tolling when his post-judgment motions were filed after the one-year limitations period to file a habeas petition had expired). Thus, motions seeking collateral relief in state court that are filed after the expiration of the one-year limitations period cannot provide a basis for tolling, even if they are timely filed under state law.

The statute of limitations may also be equitably tolled, but "only in 'rare and exceptional circumstances.'" *Sigala v. Bravo*, 656 F.3d 1125, 1127 (10th Cir. 2011) (quoting *York v. Galetka*, 314 F.3d 522, 527 (10th Cir. 2003)). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has

8

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace*, 544 U.S. at 418).

### III

Mr. Davis raises a number of arguments as to why the district court erred in dismissing his petition as time-barred. First, Mr. Davis argues that the one-year limitations period did not begin to run until his second motion for judicial review was denied. Second, he argues that even if the limitations period began to run earlier, he is entitled to statutory and equitable tolling, so his petition is timely nonetheless. Third, he argues that AEDPA's one-year statute of limitations does not apply in his case because he challenges the jurisdiction of the state court.[7] For the reasons given below, we conclude that no reasonable jurist could debate the propriety of the district court's decision to dismiss Mr. Davis's § 2254 petition as barred by the statute of limitations. *See Slack*, 529 U.S. at 478.

### A

The district court properly concluded that the one-year statute of limitations began to run on July 27, 2015. *See Davis*, 2022 WL 1618534, at *1. As relevant here, the one-year statute of limitations begins to run when the judgment "bec[omes] final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also Gonzalez*, 565 U.S. at 150. In order to seek direct

---

[7]    Mr. Davis also briefly argues that he was denied due process because the district court and magistrate judge did not adequately consider his filings. This argument is wholly unpersuasive, and we do not discuss it further.

review from a guilty plea in Oklahoma, a defendant must file a writ of certiorari to the OCCA. *See Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998); OKLA. STAT. ANN. tit. 22, § 1051(A) (West 2023). To do so, the defendant must file an application to withdraw the plea within ten days of the judgment and sentence being entered. *See Hickman*, 160 F.3d at 1271; Rule 4.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, OKLA. STAT. ANN. tit. 22, ch. 18, app. (West 2023); *see also Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012) ("The application to withdraw guilty plea and the evidentiary hearing are both necessary and critical steps in securing this appeal . . . ." (omission in original) (quoting *Randall v. State*, 861 P.2d 314, 316 (Okla. Crim. App. 1993))). Consequently, if defendants do not move within ten days after the entry of judgment and sentence to withdraw their guilty plea, the defendants' convictions become final for purposes of § 2244(d)(1)(A) after the ten days have expired. *See Clark*, 468 F.3d at 713; *Fisher v. Gibson*, 262 F.3d 1135, 1142 (10th Cir. 2001).

That is precisely what occurred here. Mr. Davis did not seek to withdraw his guilty plea within ten days of the entry of judgment on July 16, 2015. Thus, the judgment became final ten days later—on July 26, 2015—and the one-year statute of limitations began to run the next day. *See Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (discussing time calculation for purposes of AEDPA). That one-year period expired in July 2016. Because Mr. Davis's habeas petition was not filed until October 20, 2021, it was thus untimely unless statutory or equitable tolling applied.

Mr. Davis raises two primary arguments against this conclusion. First, he argues that, generally, motions for judicial review under § 982(a) are categorically part of the

direct review process, so his conviction did not actually become final for purposes of § 2244(d)(1) until the district court acted on his second motion for judicial review. Second, he argues that under the particular circumstances of his case, the motions for judicial review functioned as part of the direct review process.[8]  Neither argument is persuasive.

1

The district court properly rejected the argument that judicial review motions constitute a part of the direct review process.[9]  *See Davis*, 2022 WL 1618534, at *3 n.5. As the district court recognized, a Tenth Circuit panel already addressed this issue in a comprehensive and persuasive manner.  *See Williams v. Beck*, 115 F. App'x 32, 33 (10th Cir. 2004).  In *Beck*, the panel reasoned that "the sentence modification procedure [under § 982a] is not part of the direct review process under Oklahoma law" because a § 982a

---

[8]    The district court also rejected separate arguments brought by Mr. Davis that his action was timely under 28 U.S.C. § 2244(d)(1)(C) and (D) because the Supreme Court's decision in *McGirt*, 140 S. Ct. 2452, announced a new constitutional right that applied retroactively and because his claims could not have been presented until after *McGirt* was decided.  *See Davis*, 2022 WL 1618534, at *1.  But Mr. Davis has clarified that he does not assert that *McGirt* provides a basis for concluding that his petition was timely.  And, in any event, such an argument would be unavailing.  *See Pacheco v. Habti*, 62 F.4th 1233, 1246 (10th Cir. 2023) (rejecting a similar argument because "*McGirt* announced no new constitutional right"); *see also Jackson*, 2022 WL 2165789, at *2 ("*McGirt*'s holding is not a previously undiscoverable factual predicate for [the petitioner's] claim; it is a legal conclusion.").

[9]    Moreover, this argument may be waived because Mr. Davis did not raise it in his written submissions before the magistrate judge and, instead, raised it for the first time in his objection to the magistrate judge's report and recommendation.  *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

motion "may be made in the trial court regardless of whether direct review is pending." *Id.* In doing so, the panel relied on *Orange v. Calbone*, 318 F.3d 1167, 1170–71 (10th Cir. 2003), which noted that the inquiry is whether, under state law, the state procedure is part of the direct review process. *See Beck*, 115 F. App'x at 33 (citing *Orange*, 318 F.3d at 1170–71). The *Beck* panel also observed that "the original judgment and sentence . . . furnishes the predicate of [the petitioner's] habeas claims—not the amended judgment and sentence resulting from the sentence modification." *Id.*

The same reasoning applies with equal force here: Mr. Davis's motions for judicial review did not challenge the validity of his conviction and were independent of his ability to challenge his conviction and sentence on direct appeal. And his habeas petition is not based on anything that occurred at the sentence modification phase: rather, it challenges the jurisdiction of the conviction court. This challenge was fully cognizable on direct appeal and could have formed the basis of a federal habeas petition at an earlier date. Consequently, Mr. Davis's claims about the state court's lack of jurisdiction were not rendered timely by the fact that the state court later declined to reduce his sentence under § 982a. *See Prendergast v. Clements*, 699 F.3d 1182, 1187 (10th Cir. 2012) (observing that the statute of limitations must be applied "on a claim-by-claim basis"); *see also Burks v. Raemisch*, 680 F. App'x 686, 689–90 (10th Cir. 2017) (concluding that a resentencing did not make timely claims that could have—and should have—been raised earlier).

Mr. Davis challenges this conclusion, arguing that *Beck* and *Orange* were abrogated by the Supreme Court's opinion in *Wall v. Kholi*, 562 U.S. 545 (2011), so we

should "overrule" those decisions.  Aplt.'s Combined Opening Br. & Appl. to Grant

COA at 1–2.  But the issue in *Kholi* was whether a motion for sentence reduction under

Rhode Island law constituted part of the *collateral review process* for purposes of tolling

under 28 U.S.C. § 2244(d)(2)—not whether it constituted part of the *direct review*

*process*.  *See* 562 U.S. at 550–51.  In fact, the parties in *Kholi* agreed that "a motion to

reduce sentence under Rhode Island law is not part of the direct review process."  *Id.* at

547.[10]  Consequently, *Kholi* does not support Mr. Davis's argument about the scope of

direct review.  Nor does it call into question the persuasive analyses in *Beck* and

*Orange*.[11]

**2**

Mr. Davis's argument that, in the specific circumstances of his case, his motions

for judicial review functioned as part of the direct review process is also unavailing.  He

contends, specifically, that as part of the plea agreement, the original sentence was

"preliminary," and the trial judge assured Mr. Davis that he would consider modifying

the sentence after two years had passed (a timeline that was later extended to five years).

---

[10]     Mr. Davis points to a footnote in *Kholi* in which the Supreme Court noted that it could "imagine an argument" that the sentence reduction proceedings at issue constituted a part of the direct review process because, under Rhode Island law, parties could not challenge their sentences on direct appeal.  562 U.S. at 555 n.3.  The Supreme Court, however, did not actually decide that issue, so it does not cast any doubt on the analysis in *Beck* or *Orange*.  Additionally, unlike the situation in *Kholi*, *see id.*, Mr. Davis does not argue that Oklahoma law forecloses challenges to sentences on direct appeal.

[11]     In fact, panels of this Court have continued to follow *Orange* after the Supreme Court's opinion in *Kholi*.  *See Holbert v. Braggs*, 807 F. App'x 808, 810 n.2 (10th Cir. 2020); *Chidester v. Province*, 433 F. App'x 661, 663 (10th Cir. 2011).

Aplt.'s Combined Opening Br. & Appl. to Grant COA at 3–4.  According to Mr. Davis, his judgment was therefore not final until his second motion for judicial review was denied.

Nothing in the record supports Mr. Davis's argument that the state court entered a preliminary, rather than a final, sentence.  And he cites no authority that persuasively supports his argument that because the state court left open the possibility that Mr. Davis could receive a sentence reduction under § 982a, the original sentence was only preliminary and never became final.  His comparisons to *United States v. Anthony*, 25 F.4th 792 (10th Cir. 2022) and *Corey v. United States*, 375 U.S. 169 (1963), are inapposite because, in those cases, the trial court deferred making final judgments as to parts of the sentence.  *See Anthony*, 25 F.4th at 803–04 (involving a deferred restitution order); *Corey* 375 U.S. at 170, 175 (concerning a preliminary sentence pursuant to a statute permitting the court to commission a study prior to final sentencing).  Accordingly, even if Mr. Davis is correct that the state court told him that he could file a § 982a motion two years after his original sentencing, that would not transform § 982a into a mechanism for direct review.  Moreover, as noted above, nothing about the fact that Mr. Davis had conditions to fulfill before he could file a § 982a motion affected his ability to raise, at any time, the jurisdictional claims underlying his current habeas petition.[12]

---

[12]     Mr. Davis argues that the district court erred in declining to hold an evidentiary hearing, which, according to him would have shown that (1) the state court imposed conditions precedent on his ability to seek judicial review under § 982a and (2) the state court record was altered.  Even putting aside the significant question of whether

Nor do the purported conditions precedent constitute a state-created impediment that would change the accrual date under § 2244(d)(1)(B). The conditions precedent did not form an "impediment" to filing a habeas petition based on the conviction court's lack of jurisdiction. Nor does Mr. Davis allege that the impediment was unconstitutional or unlawful. *See Sigala*, 656 F.3d at 1127.

Consequently, reasonable jurists could not debate the district court's conclusion that the statute of limitations began to run on July 27, 2015—at the expiration of the window for direct review. Thus, absent tolling, it expired one year later, in July 2016, and Mr. Davis's habeas petition was over four years too late.

**B**

Next, Mr. Davis argues that the district court erred in not concluding that his petition was timely because of statutory and equitable tolling. But no reasonable jurist could debate the district court's decision to reject both types of tolling.

---

Mr. Davis could demonstrate that he satisfies the stringent requirements of 28 U.S.C. § 2254(e)(2), the district court acted well within its discretion in declining to grant an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 468 (2007) ("In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court."). Mr. Davis's requests for an evidentiary hearing were— at best—general and conclusory, which supports the district court's decision to deny his requests. *See Hooks v. Workman*, 606 F.3d 715, 731 (10th Cir. 2010). And "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petitioner's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474; *see Hooks*, 606 F.3d at 731. Here, even if the evidentiary hearing could have resulted in evidence supporting Mr. Davis's claim that the state trial court imposed conditions on his ability to seek judicial review under § 982a, that would not have made his petition timely for the reasons described above.

15

**1**

With respect to statutory tolling, Mr. Davis argues that because both of his motions for judicial review and his motion for post-conviction review were timely filed, they tolled the statute of limitations under 28 U.S.C. § 2244(d)(2) such that his habeas petition was timely filed.

Whether a motion for judicial review under § 982a can ever lead to tolling of the statute of limitations under § 2244(d)(2) is an "unresolved issue in our circuit." *Randall v. Allbaugh*, 662 F. App'x 571, 573 n.3 (10th Cir. 2016); *see also Ameen v. Clayton*, 829 F. App'x 864, 865 n.1 (10th Cir. 2020) (declining to resolve this issue because the habeas petition would have been untimely even if § 982a was treated as tolling the statute of limitations). And we need not resolve that issue here because even if we assumed that motions for judicial review could sometimes toll the statute of limitations, they could not do so here. Both of the motions for judicial review were filed after the one-year limitations period expired in July 2016. As such, they cannot toll the statute of limitations. *See Clark*, 468 F.3d at 714; *see also O'Bryant v. Oklahoma*, 568 F. App'x 632, 636 (10th Cir. 2014); *Perez*, 634 F. App'x at 644. And contrary to Mr. Davis's contention, there is no reason to treat motions for judicial review under § 982a differently from any other kind of motion on this point: it is a matter of plain logic that something filed after the expiration of a limitations period cannot extend that limitations period.[13]

---

[13]    Because we conclude that the motions for judicial review were filed too late to toll the statute of limitations, we need not reach the separate issue of whether they were "properly filed" for purposes of § 2244(d)(2).

*See Perez*, 634 F. App'x at 644 (applying this rule to a motion to modify sentence under Oklahoma law).

The same flaw applies with respect to Mr. Davis's argument that his application for state post-conviction relief tolled the statute of limitations. *See O'Bryant*, 568 F. App'x at 636. The application for post-conviction relief was not filed until the end of July 2020—about four years after the statute of limitations had run. It thus could not extend the one-year limitations period.

**2**

We also reject Mr. Davis's argument that he is entitled to equitable tolling. Mr. Davis contends that he is entitled to equitable tolling because the state trial court indicated that it would not consider his § 982a motions until multiple years had passed and he had completed classes at the prison. According to Mr. Davis, these representations from the trial court led him to delay filing his habeas petition, so he is entitled to equitable tolling. We have explained that equitable tolling is a rare remedy, proper only when "an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).

The problem for Mr. Davis is that, even if his attempts to seek judicial review of his sentence can be categorized as diligently pursuing his rights, he has failed to show that some extraordinary circumstance outside of his control prevented him from timely filing his habeas petition. As the district court properly recognized, *see Davis*, 2022 WL 1618534, at *2–3, any impediments to Mr. Davis's ability to seek judicial review under

17

§ 982a would not prevent him from seeking state post-conviction relief or federal habeas relief based on a lack of jurisdiction in the conviction court. *See Dill v. Workman*, 288 F. App'x 454, 457 (10th Cir. 2008) (rejecting an argument that a state court's delay in deciding a motion was a basis for equitable tolling because "the disposition of that motion is irrelevant to the calculation of the federal habeas limitations period"); *Minor v. Chapdelaine*, 678 F. App'x 695, 697 (10th Cir. 2017) ("[E]ven if we were to generously assume [the petitioner] was diligent, we are at a loss in identifying what extraordinary circumstance may have stood in his way to *prevent* timely filing of his federal application."); *Green v. Booher*, 42 F. App'x 104, 106 (10th Cir. 2002) (concluding that a petitioner was not entitled to equitable tolling based on the fact that he sought to exhaust state administrative remedies that were not required to be exhausted under AEDPA). Thus, although Mr. Davis was certainly within his rights to seek modification of his sentence pursuant to § 982a, the alleged state-created impediments to doing so are not a basis for equitable tolling.

For those reasons, Mr. Davis is not entitled to either statutory or equitable tolling and, as such, his habeas petition was untimely unless there is some other reason that AEDPA's one-year statute of limitations would not apply.

## C

Seeking to avert the time-bar, Mr. Davis asserts that AEDPA's one-year statute of limitations is simply inapplicable to him because his challenge is based on the jurisdiction of the conviction court. He asserts that (1) because lack of jurisdiction renders a judgment void and jurisdiction is never waivable, jurisdictional issues can be

raised at any time regardless of AEDPA's statute of limitations; and (2) applying the one-year statute of limitations in his case would violate the Suspension Clause.[14]  Both of these arguments are unavailing.

**1**

According to Mr. Davis, because lack of jurisdiction renders a judgment void and issues of subject-matter jurisdiction may be addressed at any time, AEDPA's statute of limitations does not bar his petition.  Mr. Davis is correct that "[a]bsence of jurisdiction in the convicting court is . . . a basis for federal habeas corpus relief cognizable under the due process clause." *Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 924 (10th Cir. 2008). But it does not follow that the jurisdiction of the conviction court can be raised at any time during habeas review in the face of AEDPA's clear time limits.[15]

---

[14]     U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

[15]     On this point, Mr. Davis contends that two previous decisions of this Court, *Magnan v. Trammell*, 719 F.3d 1159, 1164, 1176–77 (10th Cir. 2013), and *Murphy v. Royal*, 875 F.3d 896, 912 (10th Cir. 2017), "contemplate the inapplicability of AEDPA" to a conviction in Indian country.  Aplt.'s Combined Opening Br. & Appl. to Grant COA at 27.  But although these cases do question whether the deference due to state courts' factual findings demanded by AEDPA would apply to issues of Indian country jurisdiction, they do not support a conclusion that AEDPA's one-year statute of limitations is inapplicable in Indian country.  Furthermore, although Mr. Davis asserts that a challenge to a "conviction by a lower court without sovereign subject matter jurisdiction cannot be procedurally barred or waived and can be raised at any time," *id*., this statement of the law is not entirely accurate.  The full articulation of this principle is that subject-matter jurisdiction can never be waived or forfeited and thus may be challenged "at any time prior to final judgment." *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (quoting *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004)).  In other words, subject-matter jurisdiction can indeed be raised at any time—so long as a final judgment has not been entered.  In this case, final judgment for

Courts have repeatedly rejected attempts to carve out a jurisdictional exception to AEDPA's plain language. *See Pacheco v. Habti*, 62 F.4th 1233, 1245 (10th Cir. 2023) ("When Congress enacted the limitations period in AEDPA, it discerned no reason to provide a blanket exception for jurisdictional claims."); *Prost v. Anderson*, 636 F.3d 578, 592 (10th Cir. 2011) (noting that a claim based on the conviction court's jurisdiction was still subject to AEDPA's bar on second-or-successive petitions); *cf. McGirt*, 140 S. Ct. at 2479 ("Other defendants who do try to challenge their state convictions may face significant procedural obstacles, thanks to well-known state and federal limitations on postconviction review in criminal proceedings.").

In the federal habeas context, challenges to state court convictions based on the state court's lack of jurisdiction are essentially due process challenges, which are properly subject to AEDPA's procedural requirements. *See Morales v. Jones*, 417 F. App'x 746, 749 (10th Cir. 2011) (noting that though the petitioner "argues subject matter jurisdiction can never be waived and therefore he can never be barred from raising the issue" he "makes no argument to differentiate this case from any other due process violation" and thus "[a]s with any other habeas claim, it is subject to dismissal for untimeliness"); *see also Yellowbear*, 525 F.3d at 924 ("Absence of jurisdiction in the

---

Mr. Davis has already been entered, so he is incorrect that he has an unqualified right to challenge the subject-matter jurisdiction of the conviction court at this stage. That there are procedural limits on the ability to challenge subject-matter jurisdiction is evident in the outcomes reached by the decisions discussed *infra*, which have rejected attempts to except jurisdictional claims from the plain limitations provisions of AEDPA.

convicting court is indeed a basis for federal habeas corpus relief cognizable under the due process clause.").

Consequently, Mr. Davis is incorrect that his challenge to the conviction court's jurisdiction can necessarily be raised at any time. *See Pacheco*, 62 F.4th at 1245; *see also Murrell v. Crow*, 793 F. App'x 675, 679 (10th Cir. 2019) ("'[A]s with any other habeas claim,' [the petitioner's] due-process claim 'is subject to dismissal for untimeliness.'" (quoting *Morales*, 417 F. App'x at 749)).[16]

**2**

Mr. Davis further argues that because the writ of habeas corpus was originally intended to allow prisoners to challenge the jurisdiction of the conviction court, it would violate the Suspension Clause if his habeas petition was barred by AEDPA's one-year statute of limitations. This is so, he contends, because the Suspension Clause "at a minimum, protects the writ as it existed in 1789, when the Constitution was adopted," and, in 1789, a prisoner could bring a habeas challenge based on the conviction court's lack of jurisdiction. Aplt.'s Opening Br. & Appl. to Grant COA at 27 (quoting *Dep't of*

---

[16] We note that this argument has been repeatedly raised since the issuance of *McGirt*, and previous Tenth Circuit panels have uniformly—and persuasively—concluded that claims similar to those brought by Mr. Davis are still subject to AEDPA's statute of limitations. *See, e.g.*, *Allen v. Crow*, No. 22-6141, 2023 WL 5319809, at *2 (10th Cir. Aug. 18, 2023) (unpublished); *King v. Harpe*, No. 23-5041, 2023 WL 5216618, at *2–3 (10th Cir. Aug. 15, 2023) (unpublished); *Schemmer v. Crow*, No. 22-6139, 2023 WL 2924627, at *3 (10th Cir. Apr. 13, 2023) (unpublished); *Warnick v. Harpe*, 22-5042, 2022 WL 16646708, at *2 (10th Cir. Nov. 3, 2022) (unpublished); *Lamarr v. Nunn*, No. 22-6063, 2022 WL 2678602, at *2 (10th Cir. July 12, 2022) (unpublished); *Hill v. Nunn*, No. 22-6042, 2022 WL 2154997, at *1 (10th Cir. June 15, 2022) (unpublished).

*Homeland Sec. v. Thuraissigiam*, 591 U.S. ----, 140 S. Ct. 1959, 1969 (2020)). But this argument, too, is unavailing. [17]

As Mr. Davis asserts, historically, the writ of habeas corpus provided a means for prisoners to challenge the jurisdiction of the conviction court. *See Brown v. Davenport*, 596 U.S. 118, 129 (2022) ("A habeas court could grant relief if the court of conviction lacked jurisdiction over the defendant or his offense."); *Abernathy v. Wandes*, 713 F.3d 538, 554 (10th Cir. 2013) (noting that the "the writ as it existed in 1789 was available only in very limited circumstances" including to inquire into whether the conviction court had jurisdiction). Moreover, "'at the absolute minimum,' the [Suspension] Clause protects the writ as it existed when the Constitution was drafted and ratified." *Boumediene v. Bush*, 553 U.S. 723, 746 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 301 (2001), *superseded by statute*, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 310, *as recognized in Nasrallah v. Barr*, 590 U.S. ----, 140 S. Ct. 1683, 1690 (2020)).

---

[17]     Although the district court and the magistrate judge did not expressly address Mr. Davis's Suspension Clause argument, "the failure to address [an] argument does not alone warrant a certificate of appealability" because "we may deny a certificate of appealability for any reason that the record supports." *Proctor v. Whitten*, No. 21-6033, 2021 WL 5755629, at *3 (10th Cir. Dec. 3, 2021) (unpublished) (citing *Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005)); *cf. Self v. Milyard*, 522 F. App'x 435, 437 n.2 (10th Cir. 2013) ("We pause to note that, to the extent that we disagree with some of the particulars of the district court's analysis, such a disagreement does not perforce require us to grant [the petitioner] a COA, so long as we are confident in the correctness of the district court's *ultimate resolution* of his habeas claims—and we are."); *Jackson v. Utah*, 782 F. App'x 690, 695 (10th Cir. 2019) ("[W]hen reasonable jurists could not disagree with the district court's denial of a claim, we will deny a COA even if they could disagree with particulars of the district court's analysis.").

However, "[w]hether the one-year limitation period violates the Suspension Clause depends on whether the limitation period renders the habeas remedy 'inadequate or ineffective' to test the legality of detention." *Miller v. Marr*, 141 F.3d 976, 977 (10th Cir. 1998) (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)). And although "[t]here may be circumstances where the limitation period at least raises serious constitutional questions and possibly renders the habeas remedy inadequate and ineffective," *id*. at 978, that is not the case here. Mr. Davis had an adequate opportunity to raise the conviction court's lack of jurisdiction earlier, and the fact that he failed to timely do so does not mean that applying AEDPA's statute of limitations to his claims would violate the Suspension Clause. *See Winterhalter v. Nunn*, No. 22-6054, 2022 WL 3440243, at *2 (10th Cir. Aug. 17, 2022) (unpublished) (rejecting the same argument by a petitioner who brought a post-*McGirt* challenge to the jurisdiction of the conviction court); *see also Murrell*, 793 F. App'x at 679 (concluding that, notwithstanding the Suspension Clause, AEDPA's one-year statute of limitations applied to bar a petition based on lack of subject-matter jurisdiction in the conviction court); *Scruggs v. Snyder*, 41 F. App'x 829, 830 (6th Cir. 2002) (same).[18]

---

[18] This argument has also been rejected multiple times by district courts within our circuit. *See Frierson v. Harpe*, No. 22-CV-0141-CVE-CDL, 2023 WL 1956642, at *2 (N.D. Okla. Jan. 27, 2023); *Williamson v. Nunn*, No. CIV-22-00395, 2022 WL 17986821, at *4 (W.D. Okla. Dec. 29, 2022); *Pitts v. Nunn*, No. CIV-22-00025-JD, 2022 WL 17361487, at *2 n.5 (W.D. Okla. Dec. 1, 2022); *Graham v. Pettigrew*, No. CIV-20-828-G, 2022 WL 9597511, at *3 (W.D. Okla. Apr. 8, 2022), *report and recommendation accepted in part and modified in part*, 2022 WL 9497308, at *1 (W.D. Okla. Oct. 14, 2022).

23

Nor does Mr. Davis argue that he is factually innocent, which could bear on the Suspension Clause issue. *See Fisher*, 262 F.3d at 1145 (considering whether the petitioner argued that his due process violations resulted in the erroneous conviction of an innocent man in determining whether the petitioner had a cognizable argument under the Suspension Clause); *Miller*, 141 F.3d at 978 (same); *see also Winterhalter*, 2022 WL 3440243, at *2. He simply argues that there was a lack of jurisdiction, but jurisdictional issues alone do not bear on innocence. *See Pacheco*, 62 F.4th at 1244–45.

Consequently, we reject Mr. Davis's argument that AEDPA's statute of limitations is inapplicable in his case. And because reasonable jurists could not disagree on this point, or that Mr. Davis's petition is time-barred, we **deny** his request to issue a COA.

**IV**

Mr. Davis also argues that the district court erred in declining to appoint counsel pursuant to 25 U.S.C § 175. As an initial matter, Mr. Davis does not need a COA to appeal from the denial of his motion to appoint counsel. *See Harbison*, 556 U.S. at 183 (concluding that an order declining to enlarge the authority of appointed counsel is not a final order on the merits and is therefore not subject to the COA requirement); *see also Jackson*, 2022 WL 2165789, at *2 ("[The petitioner] does not need a COA to appeal the district court's order denying his motion to appoint counsel."). Nevertheless, his challenge is unsuccessful for two reasons.

First, Mr. Davis has waived his arguments related to the denial of his motion to appoint counsel, so we need not even reach the merits of his arguments. Under Federal Rule of Civil Procedure 72(a), magistrate judges may decide non-dispositive matters in

24

the first instance, and parties have the opportunity to object to the magistrate judge's rulings. And "the firm waiver rule applies when a party fails to object to a magistrate judge's non-dispositive ruling under Rule 72(a)." *Sinclair Wyo. Refining Co. v. A&B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021). Thus, unless an exception to the firm-waiver rule applies, *see id.*; *see also Duffield v. Jackson¸* 545 F.3d 1234, 1237–38 (10th Cir. 2008) (describing the exceptions to the firm-waiver rule), a party who fails to appeal a magistrate judge's ruling on a non-dispositive issue waives the right to appeal that ruling.

The appointment of counsel is such a non-dispositive issue. *See Utah v. Gollaher*, 804 F. App'x 947, 951 (10th Cir. 2020). The district court referred Mr. Davis's motion to appoint counsel to the magistrate judge, who denied it.[19] Mr. Davis then purported to move for reconsideration of that request, which the magistrate judge denied in his report and recommendation. *See* R., Vol. I, at 137 ("This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied."). But Mr. Davis did not challenge the magistrate judge's ruling on this appointment-of-counsel point in his objection. Consequently, Mr. Davis has waived any challenge to the denial of his request for appointment of counsel, and we will excuse this waiver only if one of the exceptions to the firm-waiver rule applies. Mr. Davis does not

---

[19] The magistrate judge's denial of Mr. Davis's first request for appointment of counsel was not included in the record on appeal, but we can take judicial notice of documents in the district court's record. *See Allen v. Zavaras*, 416 F. App'x 784, 785 n.2 (10th Cir. 2011).

25

argue that any of those exceptions apply; nor do we see any reason why they would. Accordingly, on waiver grounds, we could decline to reach the merits of Mr. Davis's challenge to the denial of his request for appointment of counsel.

Second, even if we were to reach the merits of Mr. Davis's arguments, however, those arguments would fail. Section 175 provides that "[i]n all States and Territories where there are reservations or allotted Indians the United States attorney shall represent them in all suits at law and in equity." According to Mr. Davis, the language of this statute makes appointment of counsel to represent Indians mandatory and decisions stating the opposite, such as *Oviatt v. Reynolds*, 733 F. App'x 929, 931 (10th Cir. 2018), are wrongly decided.

We disagree. As has been repeatedly explained by federal courts, although § 175 authorizes the United States Attorney to represent Indians on allotted lands, it does not create a mandatory duty to do so. *See Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270, 1278 (10th Cir. 2019); *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1481 (D.C. Cir. 1995); *Siniscal v. United States*, 208 F.2d 406, 409–410 (9th Cir. 1953); *see also Scott v Hormel*, 854 F. App'x 958, 960 (10th Cir. 2021); *Oviatt*, 733 F. App'x at 931. We decline to revisit this well-settled principle, particularly in light of Mr. Davis's failure to cite any authority to the contrary.

And the magistrate judge did not abuse his discretion in declining to appoint counsel. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) ("We review the denial of appointment of counsel in a civil case for an abuse of discretion."); *see also Scott*, 854 F. App'x at 960 (applying this same standard to the denial of a request for

26

appointment of counsel under 25 U.S.C. § 175). Notably, "abuse of discretion in this context is even more deferential than usual: 'Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned.'" *McCleland v. Raemisch*, No. 20-1390, 2021 WL 4469947, at *5 (10th Cir. Sept. 30, 2021) (unpublished) (quoting *McCarthy v. Weinberg*, 753 F.2d 836, 839 (10th Cir. 1985)).

In determining whether to appoint counsel, the trial court must consider a number of factors, including "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks*, 57 F.3d at 979 (quoting *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991)). If the district court "fail[s] to provide reasons for denying a request for counsel . . ., we may independently examine the propriety of such a request." *Id.* The magistrate judge denied Mr. Davis's initial request for appointment of counsel as premature because the case had not yet gone through an initial judicial evaluation to determine whether the issues presented had merit. Mr. Davis renewed his request after the State moved to dismiss, and the magistrate judge denied it without explanation when he recommended dismissing the habeas petition.

We conclude that there was no error in denying Mr. Davis's request to appoint counsel. Mr. Davis has ably presented the legal issues and evidently conducted extensive research. *See id.* Moreover, because Mr. Davis's petition was dismissed on timeliness grounds, there would be no need for an attorney to develop the factual record. *See id.* Mr. Davis asserts that access to counsel would have helped him to clarify his legal

27

arguments, but such a consideration is true in most—if not every—case and thus cannot be dispositive.

We therefore **affirm** the denial of Mr. Davis's motion to appoint counsel.

**V**

Next, we address Mr. Davis's motion for summary disposition based on newly received evidence. Specifically, Mr. Davis claims that he has received dispositive evidence from the state court clerk regarding the conditions precedent contained within his plea agreement, and he argues that, based on this new evidence, he is entitled to summary disposition in his favor and that the case should be remanded to state court. *See* 10TH CIR. R. 27.3(A)(1)(b) and (c).[20]

Mr. Davis cites no authority that newly received evidence is a basis for such a summary disposition. *See Nicholson v. Jefferson Cnty.*, 138 F. App'x 76, 80 (10th Cir. 2005) ("[N]on-jurisdictional deficiencies relating to the merits or to matters of procedure are not proper grounds for summary disposition."). And, in any event, the purportedly dispositive evidence adduced by Mr. Davis does not show that he is entitled to habeas relief or that he may circumvent AEDPA's statute of limitations. This evidence, as well as the arguments in his motion, are duplicative of the arguments in his application for a COA—that is, that his plea agreement included conditions precedent, so his sentence was

---

[20] Mr. Davis also contends that he is entitled to summary disposition under 10th Cir. R. 27.3(A)(1)(b). But that particular rule authorizes only "a motion for summary disposition *because of a supervening change of law or mootness*." 10TH CIR. R. 27.3(A)(1)(b) (emphasis added). As such, it is inapplicable here.

not final until July 14, 2020, when his second motion for judicial review was denied.[21]

Under the rationale of these arguments, Mr. Davis contends that he timely filed his

habeas petition. But, as discussed above, even if there were conditions precedent

imposed on his ability to seek judicial review under § 982a, reasonable jurists would not

dispute the district court's conclusion with respect to the timeliness of Mr. Davis's habeas

petition and so we **deny** Mr. Davis's motion for summary disposition.[22]

**VI**

Finally, we address Mr. Davis's request to proceed IFP. To proceed IFP on

appeal, Mr. Davis must make a "a reasoned, nonfrivolous argument on the law and facts

in support of the issues raised on appeal." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d

809, 812 (10th Cir. 1997) (quoting *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th

Cir. 1991)). As explained above, Mr. Davis is not entitled to a COA because reasonable

jurists could not debate the district court's ruling that his § 2254 petition is barred by

AEDPA's one-year statute of limitations. But Mr. Davis makes arguments that are "not

---

[21]     Mr. Davis cites to *Nordstedt v. Louthan*, No. 22-CV-0414-GFK-CDL, 2023 WL 3689408 (N.D. Okla. May 26, 2023), as support for his request for summary disposition. But *Nordstedt* actually cuts against Mr. Davis's argument for two reasons. First, the district court in that case treated the petitioner's request under Okla. Stat. Ann., tit. 22, § 994 (West 2023) as being part of the collateral review process, not the direct review process. *See* 2023 WL 3689408, at *3–4. Second, Mr. Davis overlooks a key difference between his situation and that of the petitioner in *Norstedt*: in that case, the petitioner sought review under § 994 eight days after his conviction became final—well within the one-year limitations period. *See id.* at *1. Here, in contrast, Mr. Davis waited almost two years to file his motion for judicial review.

[22]     For the same reasons, we reject Mr. Davis's alternative argument that the State should be required to file a responsive brief.

so thoroughly frivolous that IFP status should be denied." *United States v. Robinson*, 762 F. App'x 571, 579 (10th Cir. 2019). We therefore **grant** Mr. Davis's motion to proceed IFP.

**VII**

For the foregoing reasons, we **DENY** Mr. Davis's request for a COA, **AFFIRM** the denial of his request for appointment of counsel, **DENY** his motion for summary disposition, **GRANT** his application to proceed *in forma pauperis*, and **DISMISS** this matter to the extent that Mr. Davis challenges the dismissal of his habeas petition.

Entered for the Court

Jerome A. Holmes
Chief Judge